BILLY SMITH *et al.*, Plaintiffs-Appellants, v. FRED BURKITT *et al.*, Defendants-Appellees.

Fifth District   No. 5—02—0630

Opinion filed August 5, 2003.

John D. Drew and Bryan A. Drew, both of Drew & Drew, P.C., of Benton, for appellants.

Peter E. Popit and William A. Alexander, both of Troutt, Alexander, Popit & Warner, P.C., of Benton, for appellees.

JUSTICE WELCH delivered the opinion of the court:

The plaintiffs, Billy Smith and Brenda Smith, appeal from an order by the circuit court of Franklin County dismissing their complaint filed against the defendants, Fred Burkitt and Dorothy Burkitt. The plaintiffs alleged in their complaint that they had purchased a business from the defendants and that the purchasing agreement contained a covenant not to compete that prohibited the defendants from engaging in a business that competed with the purchased business. The plaintiffs further alleged that the defendants had breached the covenant not to compete by engaging in a business that competed

with the business purchased by the plaintiffs. In dismissing the plaintiffs' complaint, the circuit court held that the agreement between the parties did not include the sale of goodwill but that even if it did, the covenant not to compete was unreasonable and unenforceable. For the reasons that follow, we reverse and remand.

On September 16, 1999, the plaintiffs and the defendants entered into a contract entitled, "Agreement for Sale of Business Assets and for Warranty Deed." The agreement noted that the defendants owned a partnership business "previously doing business" as "Burlap and Lace." The agreement provided for the sale of the following to the plaintiffs: "[A]ll right, title[,] and interest in the assets of said business, plus the buildings and real estate on the terms and conditions herein set forth, all as set out on Exhibit A, Exhibit B[,] and Exhibit C, attached hereto." Exhibit A lists two fixtures. Exhibit B describes the real estate. Exhibit C is a list of inventory that includes several items such as quilts, a doll buggy, wicker tables, several rockers, and beds. Nothing in the agreement provides details about the nature of the business "Burlap and Lace."

The agreement stated a purchase price of $60,000. The amount consisted of $10,000 for the fixtures, $22,000 for the two buildings, $2,000 for the land, and $26,000 for the inventory. A clause in the agreement specifically excluded from the sale "all other business assets not specifically listed herein." The agreement also provided as follows: "[F]rom the date of this Agreement through and until Closing, *** Seller shall preserve intact its business organization and use its best effort to keep available the services of its present officers and key employees and to preserve the good will of those having business relationships with it." The covenant not to compete (the noncompetition clause) in the agreement provided as follows:

> "Seller covenants and agrees that they [sic] will not, within the geographical limits of Franklin County, Illinois, engage in any business competitive with Purchaser for a period of five (5) years. Directly or indirectly engaging in business of Purchaser or in any competitive business shall include engaging in business as owner, partner[,] or agent[ ] or as employee of any person, firm[,] or corporation."

On November 16, 2001, the plaintiffs filed a complaint alleging that the defendants had violated the noncompetition clause by engaging in a business that was competing with the plaintiffs' business. No details were provided regarding exactly how the business activities of the defendants competed with the plaintiffs' business. The complaint simply provided that the business purchased from the defendants involved the sale of arts and crafts.

On November 30, 2001, the defendants filed a demand for a bill of particulars seeking precise details about what business activities the defendants had allegedly engaged in that were competing with the plaintiffs' business. On December 21, 2001, the plaintiffs filed an answer stating that the defendants were manufacturing, advertising, selling, and distributing dolls in Franklin County, Illinois, that are the same line of goods purchased by the plaintiffs from the defendants.

On January 29, 2002, the defendants filed a motion to dismiss the plaintiffs' complaint. The defendants claimed that the noncompetition clause in the agreement is "too vague and indefinite to enforce since it is not possible to determine from the contract which business activities are being restricted." The defendants asked the circuit court for a strict construction of the agreement because the agreement had been prepared by the plaintiffs' attorney, "who did not discuss the [noncompetition clause] with the [d]efendants at any time before said [a]greement was executed."

On June 14, 2002, following a hearing, a transcript of which is not contained in the record, the circuit court granted the defendants' motion to dismiss. The circuit court strictly construed the agreement against the plaintiffs and ruled, "The [noncompetition] [c]lause *** is too vague and indefinite to interpret and enforce since it is not possible to determine from the [a]greement which business activities are being restricted, and therefore, the [noncompetition] [c]lause is not reasonable and is totally void ***." The circuit court also ruled that the agreement did not include the sale of any goodwill but that if it had, the circuit court would have reached the same conclusion regarding the enforceability of the noncompetition clause. On August 23, 2002, the circuit court denied the plaintiffs' motion to reconsider.

The only issue raised by the plaintiffs on appeal is "whether the circuit court abused its discretion in granting the defendants' motion to dismiss." However, within this issue, the plaintiffs present two arguments. First, the plaintiffs contend that the circuit court erred in concluding that the agreement did not include the sale of goodwill. The plaintiffs argue that goodwill was transferred as an incident to the business and that if goodwill was not included in the sale of the business, then there would not have been a need for a noncompetition clause. Second, the plaintiffs contend that the circuit court erred in ruling that the noncompetition clause was unenforceable. The plaintiffs argue that the noncompetition clause is "reasonable" and that a "nearly identical" noncompetition clause was found enforceable in *Jackson v. Hammer*, 274 Ill. App. 3d 59 (1995).

In response, the defendants contend that the circuit court did not err in ruling that goodwill was not included in the sale of the business.

The defendants argue that the agreement was for the sale of specified assets and real estate and that the agreement did not include the sale of a "business." The defendants contend that because the agreement was not for the sale of a business, there was no goodwill transferred. The defendants point out that a restrictive covenant is designed to protect the purchaser in the enjoyment and possession of the goodwill of the ongoing business transferred and that because there was no sale of a business or goodwill, the noncompetition clause is unreasonable. Second, the defendants contend that the circuit court did not err in ruling that the noncompetition clause is unenforceable, even if the agreement did involve the sale of goodwill. The defendants contend that the clause is unreasonable because it is not possible to determine from the clause which business activities are being restricted. The defendants argue that the noncompetition clause could be construed to mean any type of any conceivable business activity and that, therefore, it is unreasonable and unenforceable.

We begin our analysis by first determining the appropriate standard of review. Although the plaintiffs argue that the circuit court "abused its discretion" in granting the defendants' motion to dismiss, we review a circuit court's decision to grant a motion to dismiss under a *de novo* standard of review. In the instant case, the defendants' motion to dismiss cites section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)). However, based on the arguments of the parties and the analysis of the circuit court, it appears that the parties and the trial court analyzed the issues pursuant to subsection (a)(9) of section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2000)). Section 2—619(a)(9) allows a dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2000). The term "affirmative matter" as used in section 2—619(a)(9) has been defined as a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569 (2002). Accordingly, our review is conducted *de novo* because the circuit court dismissed the complaint pursuant to section 2—619, and thus, we need not afford deference to the circuit court's reasoning. See *Young v. McKiegue*, 303 Ill. App. 3d 380, 386 (1999).

We turn now to the dispute over the circuit court's ruling that the agreement did not include the sale of goodwill. When a court construes a contract, the principal objective is to give effect to the intent the parties possessed at the time they entered into that agree-

ment. *Pennsylvania Life Insurance Co. v. Pavlick*, 265 Ill. App. 3d 526, 529 (1994). The agreement is to be construed as a whole, giving meaning and effect to every provision where possible; "[i]t is presumed the provisions are purposefully inserted and the language is not employed idly." *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 159 (1999). A court is not to interpret an agreement in a way that would nullify any of the provisions in the agreement or render them meaningless. *Coles-Moultrie Electric Cooperative*, 304 Ill. App. 3d at 159.

In the instant case, the circuit court ruled that the agreement did not include the sale of goodwill. We disagree and reject the defendants' argument that because goodwill was not specifically provided for in the sale and because the contract specifically provided that assets not specified were not included in the sale, goodwill was not intended by the parties to be included in the sale of the business.

The agreement contains a clause that provides as follows: "Seller shall preserve intact its business organization and use its best effort to keep available the services of its present officers and key employees and to preserve the goodwill of those having business relationships with it." If goodwill was not contemplated in the sale of the business, then this provision is mere surplus and meaningless. In addition, if goodwill was not intended to be transferred, it would render the non-competition clause mere surplus and meaningless. We presume that each provision in a contract was inserted deliberately and for a purpose, and therefore, we should not afford zero weight to these provisions. See *White v. White*, 62 Ill. App. 3d 375, 378 (1978).

In addition, even though goodwill was not specifically listed as an asset transferred in the agreement, goodwill is generally transferred as an incident to the sale of a business. A similar issue arose in *Weitekamp v. Lane*, 250 Ill. App. 3d 1017, 1023-24 (1993), where the appellate court held that simply because the agreement did not refer to goodwill did not mean that goodwill was not transferred as an incident to the business. In *Weitekamp*, Weitekamp claimed that he had purchased a refrigeration repair company, C&L Company, from Lane. The purchasing agreement included a covenant not to compete. Weitekamp filed a motion for a preliminary injunction seeking to stop Lane from engaging in a competitive business. The circuit court heard testimony at a hearing on the motion, where Lane claimed that he had not sold the business to Weitekamp but that he had merely sold the assets of C&L Company to Weitekamp.

On appeal, Lane argued that the agreement did not refer to the trade name, goodwill, or customer lists and that it only pertained to the assets from the business that were mentioned in the agreement.

*Weitekamp*, 250 Ill. App. 3d at 1024. The appellate court rejected Lane's argument, noting, "[Lane] provides no authority which indicates [trade name, goodwill, and customer lists] *must* be listed in an agreement for the trial court or this court to conclude they[,] too[,] were transferred when the business was transferred." (Emphasis in original.) *Weitekamp*, 250 Ill. App. 3d at 1024. The court noted that the list of assets to be sold appeared to be the entire inventory of C&L Company, including necessary tools and equipment to operate a refrigeration repair business, and that it was unlikely Weitekamp paid $50,000 for equipment such as ladders and tools but the money did not include the sale of the business.

We find the analysis in *Weitekamp* applicable to the instant case. Although the agreement in the instant case provided for the sale of "all right, title[,] and interest in the assets of said business, plus the buildings and real estate," and specifically excluded "all other business assets not specifically listed herein," as we have already noted above, there are provisions in the agreement that reveal that the parties intended to include the sale of goodwill and, hence, the sale of a business. In addition, similar to *Weitekamp*, we note that the agreement allocates $26,000 of the purchase price for inventory that includes mostly quilts, tables, chairs, rockers, and beds. The list of inventory does not contain a cost allocated to each item but merely values the inventory as a whole at $26,000. As in *Weitekamp*, this amount certainly could include more than just those pieces of inventory (*i.e.*, goodwill).

We therefore reject the circuit court's ruling that the parties did not intend for the sale of a business or the sale of goodwill. Insofar as the circuit court ruled that the agreement between the parties did not include the sale of a business or the sale of goodwill, the circuit court is reversed.

■ We now turn to the remaining dispute—whether the noncompetition clause is unreasonable even if the agreement provided for the sale of the business and the sale of goodwill. To begin, we note that with the sale of a business, the interest to be protected by the covenant not to compete is the goodwill that is transferred. *Eichmann v. National Hospital & Health Care Services, Inc.*, 308 Ill. App. 3d 337, 343 (1999). " 'Goodwill' represents the advantages a business has over competitors due to its name, location, and owner's reputation." *Weitekamp*, 250 Ill. App. 3d at 1025. A covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and goodwill, leaving the buyer with an acquisition that turns out to be only chimerical. *Hamer Holding Group, Inc. v. Elmore*, 202 Ill. App. 3d 994, 1007 (1990).

However, courts are to apply scrutiny to restrictive covenants because they impair the availability of services and interfere with competition. *Eichmann*, 308 Ill. App. 3d at 342. For this reason, the restraints in a restrictive covenant that is ancillary to the sale of a business must be reasonable. *Eichmann*, 308 Ill. App. 3d at 342. Reasonableness pertains to the time, geographic area, and scope of the prohibited business activity. *Hamer Holding Group, Inc.*, 202 Ill. App. 3d at 1007. However, whether the restraint is reasonable is judged by the circumstances of the particular case. *Weitekamp*, 250 Ill. App. 3d at 1028. The covenant cannot be greater than necessary to protect the purchaser, oppressive to the seller, or injurious to the interest of the general public. *Weitekamp*, 250 Ill. App. 3d at 1028; *Hamer Holding Group, Inc.*, 202 Ill. App. 3d at 1009.

■ In the instant case, the parties do not dispute the reasonableness of the covenant as it pertains to the temporal or geographical restrictions. The only dispute pertains to the scope of the activity prohibited. As noted earlier, the defendants contend that prohibiting the defendants from engaging "in any business competitive with" the plaintiffs is "too vague and indefinite to interpret and enforce since it is not possible to determine from the contract which business activities are being restricted" and that "this clause can be construed to mean any type of any conceivable business activity there is." The plaintiffs, on the other hand, argue that this covenant is not unreasonable. In the plaintiffs' complaint, they contend that they purchased a business from the defendants that dealt in the sale of arts and crafts. In their answer to the bill of particulars, the plaintiffs claimed that the defendants were engaging in the manufacturing, selling, advertising, and distribution of dolls and that such activities had been purchased by the plaintiffs. Accordingly, the plaintiffs are arguing that the covenant is not as vague as the defendants contend.

In *Hamer Holding Group, Inc.*, the appellate court reviewed a covenant not to compete, ancillary to the sale of a business, where the seller then became an employee of the business sold. The covenant provided that the seller could not " 'in any manner engage in a business competing with the business of Employer anywhere in the Restricted Area.' " *Hamer Holding Group, Inc.*, 202 Ill. App. 3d at 1009. On appeal, the seller argued that the covenant was "unduly broad" because it "fail[ed] to describe the nature and scope of that business." *Hamer Holding Group, Inc.*, 202 Ill. App. 3d at 1009. On review, the appellate court noted, "Although the enforceability of a restrictive covenant is a question of law which depends on the reasonableness of its terms, such a determination depends on the unique circumstances of each case." *Hamer Holding Group, Inc.*, 202

Ill. App. 3d at 1009. The court noted that the circuit court did not reach the issue of the nature and scope of the business in which the seller could not engage and that the resolution of that issue, a factual issue intimately connected to the enforceability of the restraint, rests in the first instance with the trier of fact. *Hamer Holding Group, Inc.*, 202 Ill. App. 3d at 1009. The appellate court remanded the matter to the circuit court for determinations of the nature and scope of the plaintiff's business and whether the restraint on the seller's activity in that business was a reasonable one. *Hamer Holding Group, Inc.*, 202 Ill. App. 3d at 1010.

In the instant case, the covenant restricts the defendants from engaging in "any business competitive with [the plaintiffs] for a period of five (5) years." Contrary to the defendants' assertion, we do not believe that this prohibits the defendants from engaging in "any type of any conceivable business activity there is." Based on the plaintiffs' complaint, the business purchased from the defendants pertains to arts and crafts. If that is the case, then the covenant is certainly not unreasonable or too vague. However, because the agreement itself does not reveal the precise nature of the business purchased by the plaintiffs and what specific business activity the noncompetition clause sought to prohibit, we believe that this issue should not be determined by a motion to dismiss. Such a determination is a factual one that must be made in the first instance by the circuit court. However, in the context of the instant case, we do not believe that the noncompetition clause that prohibits the defendants from engaging in any business competitive with that of the plaintiffs is too vague and unreasonable and, therefore, unenforceable. We do believe that the opposite finding constitutes reversible error.[1]

Accordingly, we reverse the decision of the circuit court granting

---

[1]The plaintiffs rely on *Jackson v. Hammer*, 274 Ill. App. 3d 59 (1995), arguing that the noncompetition clause in that case prohibiting a party from "directly or indirectly carrying on or engaging in any retail business that is similar" to the one sold was enforceable. However, in *Jackson*, the appellate court never addressed the reasonableness of the clause. In fact, the party restricted by the clause agreed that the actions he had performed violated the prohibitions set out by the clause, and he agreed to not violate it further. *Jackson*, 274 Ill. App. 3d at 64. As the court did not address the reasonableness of the clause in that case, we believe that case offers little precedential value for the issues before us on appeal.

the defendants' motion to dismiss, and we remand for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

CHAPMAN and KUEHN, JJ., concur.